14467

WEBSTER v. WILLIAMS, TAX COLLECTOR, *ET AL.*

(191 S. E., 51)

August, 1936.

*Mr. C. E. Summers,* for appellant,

*Messrs. Adam H. Moss* and *James A. Moss,* for respondents,

April 15, 1937.

The opinion of the Court was delivered by MR. JUSTICE BAKER.

The questions presented in this case involve the constitutionality of a portion of a statute, applicable only to Orangeburg County, which undertakes to add 1 per cent. per month to all delinquent taxes, in addition to the fees and penalties provided by the general law, after the same have been placed in execution.

The appellant is the owner of certain real estate in school district No. 26, in the County of Orangeburg, the said real estate being returned in her name for taxes and the taxes charged in her name upon the books of the auditor and treasurer, respectively, for Orangeburg County. The taxes on this land went into execution for the years 1932, 1933, and 1934, in the following amounts, respectively, $56.75; $42.19, and $61.87; and three installments of back taxes for the years 1929, 1930, and 1931, in execution in the amount of $66.02. Included in the above amounts is "an interest charge" of one per cent. per month on the taxes beginning from the date that the executions were placed in the hands of the collector of delinquent taxes for Orangeburg County. The appellant, in paying these executions, paid under protest the "one (1%) per cent. per month," which amounted to a total of $36.30, for the year 1932, $13.02; for 1933, $6.80; for 1934, $5.94; and for the three installments for the years 1929, 1930, and 1931, $10.54. Appellant brought an action for the recovery

of the said sum of $36.30, alleging among other matters, that the Acts hereafter referred to, under the authority of which the amount sued for was collected, are unconstitutional, in that Subdivisions 9 and 10, Section 34 of Article 3 of the Constitution of 1895, are violated; and that said Act violates Section 5, Article 1 of the Constitution of 1895 of South Carolina, and Section 1, Fourteenth Amendment of the Constitution of the United States.

The answer of respondents admitted each and every fact alleged in appellant's complaint, and denied each and every conclusion.

On an "Agreed Statement of Facts" the case came on to be heard before Honorable M. M. Mann, Circuit Judge, who ordered the summons and complaint dismissed, from which order an appeal is taken to this Court.

Under the terms of an Act passed in 1932 (Act No. 886, p. 1539), the office of tax collector for Orangeburg County was created (Section 1) and in this Act it is provided that, beginning with the year 1933, the County Treasurer shall issue all tax executions for delinquent taxes to the tax collector of the County (Section 3). After providing that the County Treasurer shall add to the amount of each delinquent tax execution $2.00 in lieu of the costs heretofore provided by law for the County Treasurer and the sheriff (in addition to the penalties provided by law [Section 3]), it requires the tax collector to "add and collect interest at the rate of one (1%) per cent. per month, or fraction thereof, upon the amount of any execution from the date such execution is issued until final payment is made, such interest to be calculated only upon the balance remaining unpaid where he has accepted installment payments." Section 4.

In passing, attention may be called to the limited title of this Act, which is as follows: "An Act to Create the Office of Tax Collector in Orangeburg County, to Provide for the Appointment and Compensation of Such Officer and to Define His Duties."

This Act was approved April 13, 1932. At the same session of the Legislature an additional statute was passed (No. 896, p. 1560), providing in general for the payment of delinquent taxes in annual installments. This Act was approved May 5, 1932, and it is provided therein that delinquent taxes may be paid in annual installments over a period of ten years "without accumulated interest charges, except that in the event any execution for current taxes and the yearly installment of delinquent taxes for any year shall be issued to the Tax Collector of Orangeburg County, he shall add thereto and collect one per cent. per month or fraction thereof, from the date of the said execution until same shall have been paid to him in full by any taxpayer, upon the amount of such execution and upon the amount of any balance, if such execution shall be paid in installments. The same interest charge of one per cent. per month shall also be made and collected upon all current taxes in execution due by any person, firm or corporation, or charged against any property in Orangeburg County, also where no annual installments of delinquent taxes are due." Section 5.

The title of this Act is as follows: "An Act to Provide for the Determination and Refunding of Delinquent Taxes in Orangeburg County and the Payment of the Same in Annual Installments; and to Provide a Method of Crediting the Payments so Collected to the Purposes for Which the Original Levies Were Made."

In 1933, by Act No. 401, p. 561, of the Acts of that year, approved June 12, 1933, the office of tax collector for Orangeburg County is abolished (Section 1), and in the place of such office a "Collector of Delinquent Taxes" is provided for. Section 3. The Act devolves the duties of the former "Tax Collector" upon the "Collector of Delinquent Taxes." Section 1. In this act it is provided that "* * * fees and charges heretofore allowed the Treasurer, the Sheriff or Tax Collector shall be charged, collected and paid in to the general fund of the County as now provided by law."

Section 2. There is no specific provision in this statute relating to the one per cent. per month to be added to the delinquent taxes, but in the lower Court it was assumed by both parties and by the Court that the quoted language carries into the 1933 enactment, and continues in effect, the one per cent. imposition provided by the 1932 enactment.

The title of the 1933 Act is as follows: "An Act to Abolish the Office of Tax Collector for Orangeburg County, to Provide for a Collector of Delinquent Taxes, and His Appointment, Fix His Compensation, and Define His Duties."

The titles of the several statutes have been quoted, although their sufficiency under Article 3, § 17, of the Constitution, have not been challenged, because of the bearing of the absence of any reference in the titles to the item in question upon the contention of the respondents that the one per cent. is an additional tax on delinquent tax payers, as distinguished from a penalty, and as such is sustainable as a tax within the provisions of Article 10, § 6, of the Constitution.

The legislation is attacked under various provisions of the Constitution, some of which are properly pleaded, and some of which are not, but in the view that we take of the matter it suffices to deal with the question whether the statute violates the provisions of Article 3, § 34, subd. 9, of the Constitution.

After enumerating eight (seven, with Subdivision 8 stricken out) classes of legislation which may not be made the subject of local or special laws, the above-mentioned section provides (subdivision 9) : "In all other cases, where a general law can be made applicable, no special law shall be enacted."

The object of the Legislature in passing the statutes in question obviously was to promote the more prompt and efficient collection of delinquent taxes, by imposing a new burden on a percentage basis, that would increase every month that the delinquency continued after the

taxes went into execution. Whether we regard the provision as one imposing a penalty for delinquency, or as one undertaking to classify taxpayers for the purpose of taxation, the fact remains that the Legislature was not undertaking to legislate upon the general subject of taxation for the purpose of meeting the expense of operation of the County, but was providing a stimulant to accelerate the painful process of collecting delinquent taxes, and preventing future delinquencies of a high and aggravate nature.

This undoubtedly is a subject within the legislative province, and one requiring legislative action. Accordingly, we find that to meet the very purposes of the legislation now in question, the Legislature has provided by general law, in Section 2830 of the Code, for certain penalties, in the form of graduated payments, when taxes become delinquent; and in Section 2854 of the Code, further provisions are made, imposing additional penalties in the form of costs, when the taxes go into execution.

If there is anything in the situation of Orangeburg County to differentiate the tax problem there from that prevailing in other counties of the state (assuming, without deciding, that this could affect the principle now under discussion), the record fails to disclose it. We are dealing with legislation that very clearly on its face extends by additional charges the consequences of the failure to pay taxes in Orangeburg County.

We have, then, a subject which is in fact covered by the general law of the State, and as to which the Legislature has here undertaken to make a special and different provision, by a separate enactment, for Orangeburg County only.

We are unable to perceive how such a statute can escape the literal condemnation of the constitutional provision above referred to, which provision condemns a local law made to cover a situation "where a general law can be made applicable."

As we had occasion to say of another statute relating to Orangeburg County, in the case of *Salley v. McCoy,* 182 S. C., 249, 289, 189 S. E., 196, 214: "That the subject is one that can be covered by a general law is not open to serious question. It has been in fact so covered, and neither the generality of the coverage, nor the soundness of the classification of salaries of County officers on the basis implied in the act, is open to serious question."

The same idea had been previously stated by this Court in the case of *Gillespie v. Blackwell,* 164 S. C., 115, 161 S. E., 869, 871, where the principle was thus expressed: "The Legislature, by enacting a general law with respect to the acceptability of sureties on official bonds of County officials required by law to give bond, has declared in effect that a general law *can be made applicable* in such cases."

While it is impossible to lay down any general rule by which to determine whether a special or local statute comes within the constitutional inhibition now under discussion, there can be no doubt about the applicability of the inhibition in that class of cases, such as the present, where the record discloses no peculiar local conditions requiring special treatment, and where there is in force a statute of statewide operation on the subject with which the special *Act* seeks to deal on behalf of a particular County.

We are unable to see how the statute is helped, in this regard, by the contention that it imposes a tax, rather than a penalty. For this leads us to the admitted fact that the one per cent. is imposed upon the whole amount of the taxes in execution, including the State taxes, and thus increases the burden of State taxation for citizens of Orangeburg County, though the money goes to the County alone. We know of no constitutional theory upon which such a discrimination against taxpayers in Orangeburg County can be supported, independently of the Constitutional defect above pointed out.

Nor are we able to follow the viewpoint expressed in the opinion of the lower Court that the constitutional inhibition against special legislation is rendered inapplicable by reason of the fact that the legislation in question is an exercise of the taxing power under the provisions of Article 10, § 6 of the Constitution. It is quite true that under this provision special local levies may be made for ordinary County purposes, and it is an admitted fact in the cause that the proceeds of this special levy or imposition go into the County's ordinary funds, thus effecting a reduction in County taxation in general. But it is still true that the statute has the sole purpose and effect of *promoting the collection of taxes,* and of preventing long delinquencies. No attempt was made by the Legislature to levy the charge as a local or special tax; and the subject of promoting delinquent tax payments is already covered by legislation of statewide operation.

If the one per cent. imposition were sustained as a tax on the suggested theory of a classification of taxpayers into those who are delinquent and those who are not delinquent, we would be confronted with the anomaly that real and personal property may be classified for taxation according to its ownership by those who are able to pay their taxes promptly and those who are not so able, rather than strictly according to the value of such property on an assessment basis. It has not been suggested by the respondents how, in such event, they could escape the constitutional rules upon which property shall be assessed and taxed in this State. See, for example, Article 10, § 1, requiring "a uniform and equal rate of assessment and taxation"; Article 10, § 3, providing that no tax shall be levied except in pursuance of a law which shall distinctly state the object of the same; Article 10, § 5, providing that County taxes shall be uniform in respect to persons and property within the jurisdiction of the County; Article 10, § 13, requiring that County taxes shall be based upon assessments, and shall be levied

on the same assessment made for State taxes; Article 3, § 29, requiring that all property taxes shall be levied upon the actual value of the property taxes, as ascertained by an assessment made for the purpose of laying such tax.

It is perfectly apparent from the title and terms of the statute that no such purpose attached to the same in the minds of the legislators. In our opinion, the one per cent. that is to be added each month for an indefinite period until delinquent taxes are paid is plainly an additional penalty for the delinquency.

The case of *State v. Touchberry,* 121 S. C., 5, 113 .S. E., 345, relied upon by respondents and cited in the opinion below, is clearly distinguishable from the present case. There a local law providing a vehicle license tax was upheld as an exercise by the Legislature of its power under Article 7, § 11, to deal with municipal government. Such special forms of taxation are clearly not within the constitutional limitations governing the imposition of taxes upon real and personal property. Nor does such legislation include the vice present in this case that the so-called tax is based upon the amount of the statewide property tax as well as upon the amount of the local tax.

A further contention of the respondents in this regard is that Subdivision 10 of Section 34, Article 3, renders inapplicable the subdivision which we are now considering. Subdivision 10 is as follows: "The General Assembly shall forthwith enact general laws concerning said subjects for said purposes, which shall be uniform in their operations: Provided, That nothing contained in this Section shall prohibit the General Assembly from enacting special provisions in general laws."

It is argued that this provision requires the enactment of general laws on the subject referred to in the previous subsections, as to which no special legislation is permissible, and that it does not require the passage of general laws on any other subject; and so it is contended that as the subject

of taxation is not one of the matters listed in Section 34, upon which special legislation shall not be enacted, there is no constitutional inhibition against local laws on the subject of taxation.

This argument undertakes to amend the provisions of Subdivision 9 that, "in all other cases, where a general law can be made applicable, no special law shall be enacted." The respondents would have us in effect amend that section by judicial construction, by adding after the word "cases," "except on the subject of taxation." We can find no warrant for imposing such an arbitrary limitation upon this constitutional provision.

It is true, as stated in the opinion below, that "in ■ levying this tax (if we must call it a tax) the General Assembly has divided the citizens into two classes  *  *  *," those who pay their taxes promptly and those who fail to do so. Such a classification may be politically and economically sound, but it does not meet either the constitutional objection against special legislation on subjects which can be and are covered by the general laws of the state, or the further objection that the Constitution is very specific in its requirements as to the manner in which property taxes shall be imposed, none of which provisions have been met in the present legislation.

Treating the one per cent. imposition as a penalty, rather than as a tax, there is probably no question about the power of the Legislature to impose such a penalty, on a state-wide basis, for the purpose of preventing prolonged delinquencies in tax payments. But this question is not before us.

We do not deem it necessary to go into the other constitutional questions presented in the argument, and in the opinion of the Court below.

Reluctant though we are to declare an Act of the Legislature, or any portion thereof, invalid, we can see no alternative in the present case. Conceding to the Legislature all possible power in the enactment of local legislation, within

constitutional bounds, to meet the exigencies of peculiar local conditions, we cannot escape the necessity of declaring this legislative power subordinate in this case, to the restriction expressly provided in Subdivision 9 of Section 34, Article 3 of the Constitution.

Limiting our disposition of the case to the question of constitutionality raised by the pleadings, we express no opinion upon the question whether the appellant's action is maintainable, and if so, upon the legal theory presented in the complaint. Nor is this decision intended to affect any portion of the statute not directly in issue.

The order of the Circuit Court dismissing the complaint is reversed, and the cause remanded.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES CARTER, BONHAM and FISHBURNE concur.