14671

STATE *EX REL.* CHEROKEE COUNTY *ET AL.* v. BROWN *ET AL.*

(196 S. E., 889)

224

226

228

*Messrs. Wolfe & Fort* and *Carlisle, Brown & Carlisle,* for appellants,

*Messrs. John M. Daniel, Attorney General, J. Ivey Humphrey* and *M. J. Hough, Assistant Attorneys General* and *Hall, Vassy & Hall,* for respondents,

April 25, 1938.

The opinion of the Court was delivered by MR. JUSTICE FISHBURNE.

The issue before us is whether the lower Court erred in adjudging the defendants, H. M. Brown and American Surety Company of New York, liable for the sum of $2,404.50 on account of penalties which the defendant, Brown, then treasurer of Cherokee County, failed to collect from the four textile mills, Alma Mills, Hamrick Mills, Musgrove Mills, and Limestone Mills, known as the Hamrick group of mills.

His Honor, Judge Oxner, by whom the cause was heard, held that under the evidence and the applicable principles of law, both the treasurer and the defendant, American Surety Company of New York, are liable, and accordingly gave judgment against them in favor of the plaintiffs. The same questions are presented to us by this appeal which were

considered in the lower Court, and one additional issue which was not before Judge Oxner.

We have carefully considered the able brief of the appellants, but are convinced that Judge Oxner has correctly decided the questions involved in his able and well-considered order, which we adopt as the judgment of the Court, and which will be reported.

The defendants likewise appeal from an interlocutory order passed by his Honor, Judge Sease, in which he overruled a motion of the surety company to bring the Hamrick group of mills in as parties defendants. It is conceded that this motion was addressed to the discretion of the lower Court, but it is submitted that the Circuit Judge erred as a matter of law in failing to hold that a complete determination of the controversy could not be had without the presence of the four mills, and in holding that whatever supposed rights other parties may have will not be adjudicated in this action.

His Honor, Judge Sease, after referring to Section 409 of the Code, which provides, among other things, that the Court may determine any controversy between parties before it, when it can be done without prejudice to the rights of others, held that the bringing in of other parties (the mills), upon the conjecture that their rights might be affected by the final determination of the issues between the plaintiffs and the defendants in this action, would tend to confusion and to obscure the real issues between the parties then before the Court. We think Judge Sease was correct in so holding, and in overruling the motion.

The plaintiffs brought this action against the principal, and the surety on his official bond, and we can see no good reason why the issues raised by the pleadings between these litigants could not be finally determined, as they were, without the intervention of any other parties or any other issues. We are of the opinion that the discretion of his Honor, Judge Sease, was wisely exercised.

Exceptions overruled, and judgment affirmed.

Messrs. Justices Bonham and Baker concur.

Mr. Acting Associate Justice William H. Grimball dissents.

Mr. Chief Justice Stabler and Mr. Justice Carter did not participate on account of illness.

Mr. Acting Associate Justice William H. Grimball (dissenting):

I find that I am unable to agree with the majority opinion in this cause, and I shall state, as briefly as possible, my reasons therefor.

It seems to me that the sole issue in the case is that of the proper measure of damages. And it seems to me that the tax penalty is not the measure of damages.

The record shows that the taxpayer delivered checks to the treasurer of the county on March 30, 1934. The treasurer deposited these checks several months later. There was no agreement between the taxpayer and the treasurer for any delay in depositing the checks, and they would have been honored by the drawee bank at any time if presented, and were honored when presented.

The tax penalty went into effect on May 1, 1934, thirty-one days after the checks were delivered to the treasurer.

It was, of course, the duty of the treasurer to deposit the checks when he received them, and his surety is liable for any damages sustained by the State and the county by reason of his not depositing them. The measure of damages, it seems to me, is the loss of the use of the money, and not the amount of the fictitious tax penalty which has never accrued against the taxpayer.

The purpose of tax penalties is to promote the more prompt and efficient collection of delinquent taxes, and to provide a stimulant to accelerate the painful process of collecting delinquent taxes. *Webster v. Williams*, 183 S. C., 368, 191 S. E., 51, 110 A. L. R., 1348.